[No. 4202-2-III. Division Three. April 22, 1982.]

ELEANOR M. NELSON, *Respondent,* v. THE DEPARTMENT
OF EMPLOYMENT SECURITY, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for appellant.

*Norman R. McNulty, Jr.,* of *Spokane Legal Services Center,* for respondent.

MUNSON, J.—The Department of Employment Security appeals a decision of the Superior Court awarding unemployment compensation benefits to Eleanor Nelson. We reverse.

The facts are undisputed. Ms. Nelson was employed for 3 years as a cashier by the Cowles Publishing Company (Cowles) in a position where she was paid $163 per week. On June 26, 1979, she notified her supervisor she had recently been arrested for shoplifting. The record does not indicate if she was advised this might result in her termination. She went to court unrepresented, and after observing those who preceded her before the bench, she entered a

plea of guilty and received a fine, suspended jail sentence and a short deferred sentence. She returned to Cowles and advised her supervisor of her plea of guilty. Shortly thereafter, she was discharged. The basis for the discharge was the employer's concern about her trustworthiness in handling cash and because the conviction would have affected Ms. Nelson's relationship with the other employees, making her job impossible. Although one of several small items in the criminal court section of the newspaper identified Ms. Nelson as having pleaded guilty, nothing else occurred to cause her notoriety. There was nothing in her attire during her appearance before the court or at the time of the incident itself identifying her employer. The shoplifting incident occurred off her employer's premises after working hours.

The issue is not whether Ms. Nelson's guilty plea justified her discharge but whether it constituted misconduct sufficiently connected with her work to justify denial of unemployment compensation benefits. RCW 50.20.060 states:

> An *individual* shall be *disqualified* from benefits beginning with the first day of the calendar week in which he or she has been *discharged* or suspended *for misconduct connected with his or her work* and thereafter until he or she has obtained work and earned wages of not less than the suspended weekly benefit amount in each of five calendar weeks.

(Italics ours.) Ms. Nelson was initially denied benefits; in a determination notice, the Department representative stated:

> Although your actions were not directly related to your work, an employer has the right to expect certain conduct of his employees while they are not on the job. If an employee engages in acts off the job which create a direct, adverse reflection on the employer, misconduct connected with work may be found if the effect on the employer is great enough.

Ms. Nelson appealed to the Department of Employment Security Appeal Tribunal, which held in part:

2. . . . The mere fact that an employer has deemed it expedient, desirable, or necessary to discharge an employee does not conclusively prove that the actions or inactions of the employee which led to the discharge constituted willful or wanton misconduct. Misconduct must be established by the preponderance of the evidence and the party alleging the existence of misconduct has the duty of establishing same.

3. Applying the above to the case at hand, the Tribunal first notes that whatever misconduct the claimant may have engaged in was not misconduct connected with her work. In no manner was the interested employer implicated in or by claimant's behavior. There is nothing in the record to indicate that claimant was guilty of any willful or wanton disregard of her employer's best interests. The situation more properly appears to be one wherein claimant's behavior reflects upon her employability, but not on her employer. Separation on such account is for a nondisqualifying reason.

Cowles then appealed to the Commissioner of the Department of Employment Security, who denied benefits and set aside the decision of the Appeal Tribunal. The Commissioner's decision stated in part:

However, contrary to the Appeal Tribunal's Conclusion No. 3, the Commissioner has decided in a strikingly similar case involving a bank teller, that the individual was discharged for misconduct. Summarized the Commissioner:

". . . it seems obvious that if the bank cannot have complete confidence and trust in the claimant, it cannot entrust her with the job of teller since that job involves handling funds not belonging to her. Her admission of attempted theft must have a direct effect on the degree of confidence and trust the bank can place in her, and in these circumstances can only result in relieving the claimant of her duties. Attempted theft is "misconduct," and on the facts shown is directly "connected with the work." *In re Tegethoff,* Comm. Dec. 1122 (1974).

The undersigned concludes from the foregoing that the claimant herein was discharged for misconduct connected with the work, and is subject to the disqualification . . .

*In re Tegethoff,* Empl. Sec. Comm'r Dec. 1122 (1974),

involved a bank teller who stole an 89-cent item from a department store. The Commissioner in *Tegethoff* appears to hold, as a matter of law, no one convicted of a crime may be allowed to hold a job which involves handling money. We cannot accept this as an absolute. However, we do agree that if properly advanced, the problem of trust by the employer might justify withholding benefits, as we discuss below.

On appeal to the Superior Court, the court concluded:

> In this case the record makes it clear that the act of shoplifting, as established by the plea of guilty, was not connected with the petitioner's work. Therefore, the denial of benefits by the Commissioner in his decision reversing the Appeal Tribunal was clearly erroneous and was an error of law.

■ Before reaching the primary issue, we must determine the appropriate standard of review. The State urges that it is the "clearly erroneous" or "arbitrary and capricious" standard. However, we agree with Ms. Nelson that it is the "error of law" standard because, as noted in *Daily Herald Co. v. Department of Employment Security,* 91 Wn.2d 559, 561, 588 P.2d 1157 (1979):

> A mixed question of law and fact exists in "'[c]ases where there is dispute both as to the propriety of the inferences drawn by the agency from the raw facts and as to the meaning of the statutory term . . .'" *Leschi Improvement Council v. State Highway Comm'n,* 84 Wn.2d 271, 283, 525 P.2d 774 (1974).

Here the facts are undisputed. The dispute rests with the interpretation of the words, "misconduct connected with his or her work . . .", RCW 50.20.060, and the application of the undisputed raw facts to the law. Accordingly, we shall review the record de novo to determine whether the Commissioner properly denied benefits.

The key term "misconduct" has been defined in *Willard v. Employment Security Dep't,* 10 Wn. App. 437, 444, 517 P.2d 973 (1974), quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636, 640 (1941), as:

[T]he intended meaning of the term "misconduct," . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good–faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

Both *Boynton* and *Willard* involved misconduct during working hours, on the job premises. Here we are concerned with off–duty, off–premises misconduct. So the precise issue is: if there was misconduct, was the "misconduct connected with . . . her work . . ." If so, Ms. Nelson will be denied unemployment compensation benefits.

■ The basic purpose of the Unemployment Compensation Act is to alleviate the harms of unemployment caused by no fault of the employee. *Willard v. Employment Security Dep't, supra.* Thus, the emphasis in determining whether misconduct has occurred is on the volitional element of the conduct, *i.e.*, whether the employee acted knowing his conduct might result in dismissal. As stated in *Boynton Cab Co. v. Neubeck, supra,* 237 Wis. at 258–59:

If mere mistakes, errors in judgment or in the exercise of discretion, minor and but casual or unintentional carelessness or negligence, and similar minor peccadilloes must be considered to be within the term "misconduct," and no such element as wantonness, culpability, or wilfulness with wrongful intent or evil design is to be included as an essential element in order to constitute misconduct within the intended meaning of the term as used in the statute, then there will be defeated, as to many of the great mass of less capable industrial workers, who are in the lower income brackets and for whose ben-

efit the act was largely designed, the principal purpose and object under the act of alleviating the evils of unemployment by cushioning the shock of a layoff, which is apt to be most serious to such workers.

Provisions of the act must be interpreted in light of its policies, and as noted in *Weaver v. Wallace,* 565 S.W.2d 867, 869–70 (Tenn. 1978):

> The disqualification because of "misconduct connected with their work" provision, being penal in nature, is to be construed liberally in favor of the employee so as to minimize the penal character of the provision by excluding cases not clearly intended to be within the exception.

Misconduct, then, must be viewed as involving some standard of right or wrong. This standard is generally referred to as conduct "the employer has the right to expect of his employee, . . ." 48 Am. Jur. *Social Security, Unemployment Insurance & Retirement Funds* § 38 (1943). Put another way, there is an express and implied contract between employer and employee which sets the bounds of acceptable conduct, and so by exclusion defines misconduct. Kempfer, *Disqualifications for Voluntary Leaving and Misconduct,* 55 Yale L.J. 147, 166 (1945). And as suggested in *Boynton Cab Co. v. Neubeck, supra,* violations of this implied code of conduct must be intentional or grossly negligent.

These concepts overlay the definitions of connection with work found in other jurisdictions. Those definitions encompass a wide range of tolerance for the degree of connection required to deny benefits. Some require a great deal of connection, others very little. *See* Annot., *Conduct or Activities of Employees During Off–Duty Hours as Misconduct Barring Unemployment Compensation Benefits,* 89 A.L.R.2d 1089 (1963 & Supp. 1979). We also note that the concept of misconduct connected with work carries with it the idea that some misconduct is *not* connected with work.

The Department of Employment Security has consistently defined connection to embody all these concepts by

requiring a showing of a "direct, adverse reflection on the employer" in order to find misconduct connected with work. *In re Wilkes,* Empl. Sec. Comm'r Dec. 2d 432 (1978); *In re Shaughnessy,* Empl. Sec. Comm'r Dec. 2d 128 (1976); *In re Tegethoff,* Empl. Sec. Comm'r Dec. 1122 (1974); *see also In re Chambers,* Empl. Sec. Comm'r Dec. 1193 (1974); *In re Miller,* Empl. Sec. Comm'r Dec. 186 (1955). The burden for showing a direct, adverse impact is placed upon the employer and must be shown by a preponderance of the evidence, *In re Barthel,* Empl. Sec. Comm'r Dec. 2d 451 (1978).

This approach is consistent with the majority of states which generally looks to the nexus between the conduct and the job, the harm to an employer's interest, and whether the interest harmed was of a nature that the employee should have expected to lose his job if he harmed that interest.[1] *See Employment Security Comm'n v. Acosta,* 93 Ariz. 120, 378 P.2d 929 (1963); *O'Neal v. Employment Security Agency,* 89 Idaho 313, 404 P.2d 600 (1965); *Johnson v. Board of Comm'rs,* 348 So. 2d 1289 (La. Ct. App. 1977); *Ostrofsky v. Maryland Employment Security Bd.,* 218 Md. 509, 147 A.2d 741 (1959); *Jones v. Michigan Employment Security Comm'n,* 4 Mich. App. 300, 144 N.W.2d 795 (1966); *Laswell v. Industrial Comm'n,* 534 S.W.2d 613 (Mo. Ct. App. 1976); *Giese v. Employment*

---

[1]Several states follow a different approach, disqualifying the employee any time his conduct makes him unsuitable in the eyes of the employer. We reject this approach because it does not require the employer's interest to be an important one and could allow disqualification for trivial breaches of the employer's code of conduct. *Texas Employment Comm'n v. Ryan, supra; see also Osborn v. Review Bd.,* ___ Ind. App. ___, 381 N.E.2d 495 (1978); *Grimble v. Brown,* 247 La. 376, 171 So. 2d 653, *cert. denied,* 382 U.S. 861, 15 L. Ed. 2d 99, 86 S. Ct. 123 (1965); *Jackson v. Doyal,* 231 So. 2d 462 (La. Ct. App. 1970); *Sain v. Labor & Indus. Relations Comm'n,* 564 S.W.2d 59 (Mo. Ct. App. 1978); *D'Iorio v. Commonwealth Unemployment Compensation Bd. of Review,* 42 Pa. Commw. 443, 400 A.2d 1347 (1979); *see generally* Kempfer, *Disqualifications for Voluntary Leaving and Misconduct,* 55 Yale L.J. 147 (1945). This approach is implicitly rejected by the Department of Employment Security, as well; *see In re Miller,* Empl. Sec. Comm'r Dec. 186 (1955).

*Div.,* 27 Ore. App. 929, 557 P.2d 1354 (1976); *Texas Employment Comm'n v. Ryan,* 481 S.W.2d 172 (Tex. Civ. App. 1972); *Przekaza v. Department of Employment Security,* 136 Vt. 355, 392 A.2d 421 (1978); *Gregory v. Anderson,* 14 Wis. 2d 130, 109 N.W.2d 675, 89 A.L.R.2d 1081 (1961).

Thus, we support the basic approach of the Department, which we believe can be broken down to these elements: to establish misconduct connected with work the employer must show, by a preponderance of evidence, that the employee's conduct (1) had some nexus with her work; (2) resulted in some harm to the employer's interest; and (3) was in fact conduct which was (a) violative of some code of behavior impliedly contracted between employer and employee, and (b) done with intent or knowledge that the employer's interest would suffer.

■ In this case, the Commissioner of the Employment Security Department applied the Department's test and found misconduct connected with the work. Our review is de novo, but we are prone to agree. The employer advanced as its reason for termination that conviction for a theft made Ms. Nelson untrustworthy in the eyes of both the employer and the other employees; this lack of trust would in Cowles' opinion make Ms. Nelson's position as a cashier untenable.

This meets the standards of misconduct; a job handling money is a position of trust and impliedly demands conduct which promotes trustworthiness. Ms. Nelson should have known her conviction for shoplifting would influence her trustworthiness in the eyes of her employer and peers. Also, she should have known that conduct which impugned her trustworthiness would directly affect her ability to do her job, and thus would be adverse to her employer's interest. All these points were established by the employer without challenge by Ms. Nelson; thus under the facts as presented, misconduct connected with her work was established and Ms. Nelson must be denied benefits.

Judgment of the Superior Court is reversed; the decision

of the Commissioner of the Employment Security Department is reinstated.

McINTURFF, C.J., and GREEN, J., concur.

Reconsideration denied May 12, 1982.

Review granted by Supreme Court July 16, 1982.