[No. 4897–3–II.   Division Two.   April 27, 1982.]

JAMES W. DURHAM, ET AL, *Respondents,* v. THE
DEPARTMENT OF EMPLOYMENT SECURITY,
ET AL, *Appellants.*

Kenneth O. Eikenberry, Attorney General, and Matthew J. Coyle, Assistant; Bruce M. Cross and Russell L. Perisho, for appellants.

Clark D. Silliman, for respondents.

WORSWICK, J.—The Department of Employment Security and Asarco, Inc., appeal a superior court judgment reversing a decision by the Commissioner of the Department of Employment Security that the respondent employees engaged in work–connected misconduct within the terms of RCW 50.20.060 disqualifying them from receiving unemployment compensation following their discharge by Asarco. We reverse the judgment and reinstate the Commissioner's decision.

Our review is governed by the following principles:

1. Because we review the same record on the same basis as did the superior court, we do so without reference to the conclusions reached by that court.

2. For the same reason, findings of fact and conclusions of law entered by the superior court are superfluous to our review. *Andreas v. Bates,* 14 Wn.2d 322, 128 P.2d 300 (1942).

3. The Commissioner's decision is prima facie correct and the burden of proof is upon the party attacking it. *In re All–State Constr. Co.,* 70 Wn.2d 657, 425 P.2d 16 (1967).

4. It may be reversed only if "clearly erroneous in view of the entire record as submitted and the public policy contained in the act . . ." *Schuffenhauer v. Department of Employment Security,* 86 Wn.2d 233, 235, 543 P.2d 343 (1975); *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969); *Willard v. Employment Security Dep't,* 10 Wn. App. 437, 517 P.2d 973 (1974); RCW 34.04.130(6)(e).

5. It is clearly erroneous if, although there is evidence to support it, this court is left with the definite and firm conviction that a mistake has been committed. *Schuffenhauer v. Department of Employment Security, supra;*

*Ancheta v. Daly, supra; Willard v. Employment Security Dep't, supra.*

In September 1978, respondents were employed in the anode department of Asarco's Tacoma smelter. They worked the day shift from 7 a.m. to 3 p.m. Toward the end of their shift, respondents routinely drained molten copper from a 300–ton capacity furnace and cleaned the "tap hole." This was done so when the furnace was refilled, or "charged," the plug that fits in the tap hole would not fail and allow tons of molten copper to escape.[1] After finishing this work, the crew customarily washed up between 2:40 p.m. and 3 p.m. before leaving the plant.

On September 26, 1978, respondent Hurley notified his foreman four times between 9 a.m. and 2:15 p.m. that he did not want to work past 2:40 p.m.

At 2:15 p.m., the foreman informed all respondents that if they did not stay until the furnace was drained, they would be discharged. At 2:40 p.m., the furnace was not totally drained, but respondents nevertheless left. Substitute workers were brought in and completed the work in 5 minutes. The next day Asarco discharged respondents.

The Department denied respondents' claim for unemployment compensation, the appeal tribunal recommended that the denial be affirmed and the Commissioner did affirm, all on the basis that respondents engaged in work–connected misconduct within the terms of RCW 50.20.060.[2]

---

[1]Such a "runaway furnace" actually occurred in August 1978 at the Asarco smelter. When the plug failed, approximately 100 to 150 tons of molten copper broke loose from the furnace, mixed with water on the floor and caused a tremendous explosion.

[2]The discharges were appealed through the grievance procedure prescribed in the collective bargaining agreement and respondents were ultimately reinstated without back pay.

We note with interest that the appeal tribunal found, on disputed evidence, that respondents had been asked to work overtime, the Commissioner found they had not and the trial court, in its oral decision, concluded they had. The trial court's oral decision indicated only that the Commissioner's decision was clearly erroneous as to this single fact. We believe the dispute over this fact may have obscured the broader question presented.

■ The policy of the act is announced in RCW 50.01-.010 which declares the legislative intent to provide for those who become unemployed through no fault of their own. Read in light of this policy, it is clear that RCW 50.20.060 is intended to disqualify from benefits those whose own behavior is the cause of their unemployment. It provides:

An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has been discharged or suspended for misconduct connected with his or her work . . .

Because of the infinite variety of work and the enormous potential for disputes about what constitutes misconduct and when it is connected with work, the Commissioner must be allowed a reasonable latitude to decide on a case by case basis whether this statute applies.[3] In doing so, the Commissioner must, of course, stay within the interpretations of the statute made by the courts of this state.

■ The only previous case to attempt such an interpretation on facts analogous to this case is *Willard v. Employment Security Dep't, supra,* which adopted the following general statement from *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941):

the intended meaning of the term "misconduct," . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or

---

[3]We stress here that the Commissioner's duty is to administer the act and not to be unduly concerned with what perhaps may be an underlying labor–management dispute.

ordinary negligence in isolated instances, or good–faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Willard,* 10 Wn. App. at 444. In deciding the case before it, the *Willard* court was required to refine and simplify these concepts. A thorough reading of *Willard* and our own consideration of the statute lead us to conclude that the following guidelines are appropriate in applying RCW 50.20.060 to this and similar cases:

1. The employer's order must have been reasonable.
2. The employee's disobedience must have been intentional.
3. The consequences of disobedience to the employer must have been of substance and not merely trivial.
4. There must have been no overriding health or safety factors to excuse disobedience.

After reviewing the whole record and having considered the policy of the Employment Security Act in view of these guidelines, we do not have a definite and firm conviction that the Commissioner's decision was mistaken.

The Asarco order was manifestly reasonable, the disobedience was obviously intentional and the potential consequences were very serious. No health or safety factors of any kind were involved.

Respondents' position throughout these proceedings has been that the order required them to work overtime and they were not required to do so; therefore, they committed no misconduct. The collective bargaining agreement had no provision concerning overtime. Whether working in the wash–up time was considered overtime and whether overtime was mandatory or voluntary were disputed. Respondents contend that work after 2:40 p.m. was overtime and overtime was voluntary; they stress that employees who worked later in the past were paid overtime (as they could not be expected to finish showering before 3 p.m.), and the overtime was voluntary on the only other occasion, in 1978, that the work ran past 2:40 p.m.

Respondents' position has no merit for two reasons. First,

it is by no means clear that Asarco was without authority to require overtime in these circumstances. *See* F. & E. Elkouri, *How Arbitration Works* 494 (3d ed. 1973). Second, it is clear that, at best, there was a dispute over the overtime question. Under such circumstances, respondents had a duty to obey the order and resolve the dispute by appropriate grievance procedures later. *Willard,* 10 Wn. App. at 447.

The Superior Court judgment is reversed and the Commissioner's decision is reinstated.

PETRICH, A.C.J., and GREEN, J., concur.