[No. 7235-1-II.   Division Two.   October 7, 1985.]

DOUGLAS PACQUING, *Appellant,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, ET AL, *Respondents.*

---

*William F. Dippolito* and *Mark A. Hammer,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells* and *Thomas L. Anderson, Assistants,* for respondents.

WORSWICK, C.J.—The Commissioner of the Department of Employment Security determined that Douglas Pacquing was disqualified from receiving unemployment compensation because he had been discharged from his employment for work–connected misconduct.[1] After absences from work for medical reasons, Pacquing had forged return–to–work slips in his doctor's name, in violation of his employer's rule against falsification of company records. Pacquing appeals here from a superior court judgment affirming the Commissioner's determination. We affirm.

Pacquing, a marine electrical apprentice, had a serious eye condition that worsened in late 1981. His doctor told him that he could take prescribed medication to control the symptoms, but that removal of the eye was the only permanent remedy. Regular visits to the doctor apparently were not necessary.

In late 1981 and early 1982, Pacquing frequently left work early or skipped a day because of eye pain. His supervisor insisted, for job related safety reasons, that he present a statement from his doctor justifying each return

---

[1] RCW 50.20.060 provides that "An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has been discharged or suspended for misconduct connected with his or her work . . ."

to work. Pacquing believed this was unnecessary. It is not clear from the record that he tried to explain his reasons to his supervisor or the safety department, but it is clear that he did not present a statement from his doctor indicating that return–to–work statements were unnecessary and did not explain his position to the personnel department or to higher management. What he did do was forge such statements at least twice, in violation of a company rule against falsification of records. When the forgeries were discovered, Pacquing was fired.

Pacquing's argument comes down to the simple assertion that what he did hurt no one, and he only did it because he wanted to work. Thus, he contends, the Commissioner's determination was an error of law, because his conduct did not constitute work–related misconduct as contemplated by the statute.[2] We disagree. We hold that an intentionally dishonest act, in violation of an employer's reasonable rule or order, committed for the purpose of affecting the perpetrator's work situation, is work–connected misconduct per se.

■ RCW 50.20.060 disqualifies an employee from receiving unemployment compensation if terminated for work–connected misconduct, but no statute tells us what this means. *Willard v. Employment Sec. Dep't,* 10 Wn. App. 437, 517 P.2d 973 (1974) ventured to remedy this by importing a definition from Wisconsin. *Willard,* 10 Wn. App. at 444, citing *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636 (1941).[3] Recognizing the difficulty

---

[2]The error of law standard governs our review of this case. *See Ciskie v. Department of Empl. Sec.,* 35 Wn. App. 72, 664 P.2d 1318 (1983).

Pacquing also claims the Commissioner erred by ruling against him, overruling an administrative law judge who had ruled for him, without taking additional evidence. The Commissioner is empowered to make the decision and may, but is not required to, take additional evidence. *See* RCW 50.32.080; *Alexander v. Department of Empl. Sec.,* 38 Wn. App. 609, 688 P.2d 516 (1984). The argument is frivolous.

[3]In *Ciskie v. Department of Empl. Sec., supra,* we pointed out that an employee discharged for cause has not necessarily committed work–connected

in applying the verbose and general *Neubeck* definition, in *Durham v. Department of Empl. Sec.,* 31 Wn. App. 675, 644 P.2d 154 (1982), we distilled the law into four principles intended to serve as a checklist in analyzing these cases. To constitute work–related misconduct under the statute:

1. The employer's [rule or] order must have been reasonable.
2. The employee's disobedience must have been intentional.
3. The consequences of disobedience to the employer must have been of substance and not merely trivial.
4. There must have been no overriding health or safety factors to excuse disobedience.

*Durham,* 31 Wn. App. at 679.

Three of the *Durham* criteria clearly apply here. A rule against falsifying records is obviously reasonable, Pacquing's acts were admittedly intentional, and neither Pacquing's health or safety, nor that of anyone else, would have been jeopardized if he had obeyed the rule. Were the consequences to the employer of substance and not merely trivial? We hold that they were.

Pacquing's argument would have us focus on the purity of his motives and the sympathy of his situation, and thus would have us brush lightly over the potentially serious consequences of what he did. We refuse to travel this road. We cannot accept a claim that pure motives are an excuse for intentional dishonesty.

His more significant argument, for purposes of the *Durham* criteria, is that the employer was not hurt. This may be true, but only as to short–term measurable loss. Of greater importance is the broad impact of dishonest behavior. In our view, an employer has such a serious and substantial interest in maintaining the integrity of its rules forbidding dishonesty by its employees that any intentional

---

misconduct disqualifying the employee from receiving benefits (*e.g.,* simple negligence or good faith errors in judgment, albeit grounds for discharge, do not constitute misconduct under the statute).

violation for the purpose of affecting the violator's work situation is work–connected misconduct per se; no further damage to the employer's interest need be shown. If we held otherwise, we would invite dishonest violations of work rules and justifications based on sympathy.

Our holding, that the Commissioner's determination in this case was correct as a matter of law, serves the policy of the statute, to protect those who become unemployed through no fault of their own (RCW 50.01.010), and to disqualify those whose misbehavior brought about their unemployment. *Durham,* 31 Wn. App. at 678.

Affirmed.

PETRICH and ALEXANDER, JJ., concur.