[No. 7514-1-III.   Division Three.   January 22, 1987.]

WILLIAM R. SHAW III, *Respondent,* v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for appellant.

*Kenneth Isserlis* and *Norman R. McNulty, Jr.,* of *Spokane Legal Services Center,* for respondent.

McINTURFF, C.J.—The Department of Employment Security appeals the Superior Court's reversal of its denial of unemployment benefits to William Shaw. RCW 50.20.060 disqualifies persons from benefits who are discharged "for misconduct connected with . . . work". Mr. Shaw's conduct does not meet the definition of misconduct as adopted in this state. Thus, we affirm the Superior Court.

For purposes of appeal, Mr. Shaw does not challenge the findings of fact of the Department's commissioner.[1] Those findings establish that Cowles Publishing Company employed Mr. Shaw as a truck driver from early 1980 until his discharge on August 18, 1984. The Company's schedule required that Mr. Shaw be at the loading dock with his truck ready to go by 12:45 a.m.

According to the written record maintained by his direct supervisor, Mr. Shaw was late to work 14 times during the 15 months from May 10, 1983, through August 17, 1984. The supervisor's record, which the commissioner found to be accurate, details the dates of Mr. Shaw's tardiness and his excuses, as follows:

---

[1] With some additions, the commissioner adopted the findings of the administrative law judge who had affirmed the initial denial of Mr. Shaw's claim for benefits.

| 1. May 10, 1983. | Mr. Shaw is one half hour late due to car problems. |
| 2. June 11, 1983. | Mr. Shaw does not report to work at all due to car problems. |
| 3. November 24, 1983. | Mr. Shaw is unable to start car. Supervisor picks him up. |
| 4. November 30, 1983. | Mr. Shaw is 20 minutes late because a policeman stops him on the way to work. |
| 5. December 1, 1983. | The log does not reflect a reason for this tardiness. |
| 6. December 2, 1983. | He is late because he "did not realize the time." |
| 7. December 6, 1983. | Mr. Shaw is late by approximately 20 minutes. |
| 8. January 21, 1984. | He is late by approximately 30 minutes. |
| 9. April 23, 1984. | He is late by 15 minutes. |
| 10. June 15, 1984. | He is late by 15 minutes. |
| 11. August 4, 1984. | The log does not reflect how late Mr. Shaw arrived at work, nor the reason for his tardiness. |
| 12. August 10, 1984. | Again, Mr. Shaw's arrival time and the reason for his tardiness are not noted. |
| 13. August 11, 1984. | Mr. Shaw is approximately one half hour late. |
| 14. August 17, 1984. | Mr. Shaw telephones at 1:10 a.m. and indicates he has just awakened. |

According to the log, his direct supervisor verbally warned Mr. Shaw on February 1, 1984, that his tardiness was considered excessive and that if it continued, his job would be in jeopardy. While not reflected in the log or in the commissioner's findings, both of his supervisors testified that they talked to Mr. Shaw "all the time" about his tardiness and that the last warning was given just days before he was terminated. The Company discharged him on August 18, 1984.

The findings further state that the last two instances of

tardiness were beyond Mr. Shaw's control, *i.e.,* a power failure had stopped his alarm clock. However, the commissioner found that overall, Mr. Shaw's reasons for his tardiness were not justifiable. The commissioner concluded:

> The claimant's tardiness, in this case, was due to his own carelessness or negligence. That carelessness or negligence was of such a gross and repetitive degree as to evince a willful and wanton disregard of the best interests of the employer. We therefore conclude that the claimant's discharge was for misconduct within the meaning of the Employment Security Act.

Thus, the commissioner denied benefits pursuant to RCW 50.20.060.

Mr. Shaw appealed this decision to the Superior Court, which reversed; the Department appeals.

■ Where the facts found by the commissioner are undisputed, as here, the "error of law" standard, RCW 34.04.130(6)(d), is the appropriate standard. *Ciskie v. Department of Empl. Sec.,* 35 Wn. App. 72, 74, 664 P.2d 1318 (1983). "Whether these facts constitute 'misconduct' is properly reviewed as a question of law." *Ciskie,* at 74 (citing *Daily Herald Co. v. Department of Empl. Sec.,* 91 Wn.2d 559, 588 P.2d 1157 (1979)). We apply the same standard to the commissioner's record as the Superior Court does and make our own independent determination. *Rasmussen v. Department of Empl. Sec.,* 98 Wn.2d 846, 850, 658 P.2d 1240 (1983); *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 323–24, 646 P.2d 113, *cert. denied,* 459 U.S. 1106 (1982).

■ "Misconduct" is not defined in the Employment Security Act. In deciding what constitutes misconduct, our courts have utilized the definition set forth in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259–60, 296 N.W. 636, 640 (1941):

> [T]he intended meaning of the term "misconduct," . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in

carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good–faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*See Ciskie,* at 75; *Durham v. Department of Empl. Sec.,* 31 Wn. App. 675, 678–79, 644 P.2d 154 (1982); *Willard v. Employment Sec. Dep't,* 10 Wn. App. 437, 444, 517 P.2d 973 (1974).

In *Ciskie,* at 76, the court held:

Not every deviation from the reasonable demands of an employer bars unemployment benefits. For example, ordinary negligence and good faith errors in judgment are not misconduct. *Boynton Cab. Co. v. Neubeck, supra.* The deviation must be such as to evince a willful or wanton disregard of the employer's interest. *Willard v. Employment Sec. Dep't, supra* at 445.

"[P]ersistent or chronic . . . tardiness, at least where . . . without reasonable excuse . . . or . . . continued in the face of warnings by the employer, constitutes willful misconduct within the meaning of the statutes". Annot., *Discharge for Absenteeism or Tardiness as Affecting Right to Unemployment Compensation,* 58 A.L.R.3d 674, § 3 at 685 (1974), and cases cited therein. For example, courts have found misconduct where the employee was late approximately 24 times in a 12–week period and where the employee was late approximately 50 percent of the time. *American Process Lettering, Inc. v. Unemployment Comp. Bd. of Review,* 50 Pa. Commw. 272, 412 A.2d 1123 (1980); *Langlois v. Administrator, Unemployment Comp. Act,* 24 Conn. Supp. 177, 188 A.2d 507 (1963). However, there are no general guidelines or "rules of thumb" that define when tardiness becomes chronic or excessive so as to fit within the definition of misconduct; each case must be judged on

its own facts and circumstances. *Cf. Anderson Motor Serv., Inc. v. Review Bd.,* 144 Ind. App. 537, 247 N.E.2d 541, 543 (1969) (making the same observation with regard to absenteeism).

Unquestionably, Mr. Shaw's record validates his discharge. But we hold his conduct does not amount to the misconduct necessary to deny unemployment benefits. The evidence here that Mr. Shaw was late 14 times in 15 months is in no way comparable in sheer numbers of occurrences to the evidence in, for example, *American Process Lettering* and *Langlois,* where the courts found the employees' tardiness constituted misconduct. More importantly, the final instances of tardiness which precipitated the Company's decision to fire Mr. Shaw were for a good reason, a power outage, according to the findings of the commissioner himself. Under these circumstances, Mr. Shaw's conduct cannot be said to evince "wilful or wanton disregard of an employer's interests". *Boynton Cab Co. v. Neubeck, supra.*

We reach this conclusion keeping in mind both the principle that due deference is accorded agency interpretations of statutes in the area of its expertise and the principle that the disqualification provisions of the unemployment compensation act are liberally construed in favor of the employee. *See Hayes v. Yount,* 87 Wn.2d 280, 287, 552 P.2d 1038 (1976); *Nelson v. Department of Empl. Sec.,* 31 Wn. App. 621, 627, 644 P.2d 145, *rev'd on other grounds,* 98 Wn.2d 370, 655 P.2d 242 (1982).

Accordingly, we affirm the judgment of the Superior Court. We also award Mr. Shaw $2,130 as reasonable attorney fees on appeal pursuant to RCW 50.32.160.[2]

MUNSON and PETRICH, JJ., concur.

---

[2]RCW 50.32.160 provides, *inter alia:*

"It shall be unlawful for any attorney engaged in any appeal . . . involving the individual's application . . . for benefits to charge or receive any fee therein in excess of a reasonable fee to be fixed by the superior court in respect to the services performed in connection with the appeal taken thereto and to be fixed by

the supreme court or the court of appeals in the event of an appeal thereto, and if the decision of the commissioner shall be reversed or modified, such fee and the costs shall be payable out of the unemployment compensation administration fund."