[No. 13028–5–I.   Division One.   December 20, 1985.]

JAMES D. PETERSON, *Appellant,* v. THE DEPARTMENT
OF EMPLOYMENT SECURITY, *Respondent.*

*Michele S. Wugalter* and *Perkins, Coie, Stone, Olsen & Williams,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Joan Caplan* and *Mary Ellen Combo, Assistants,* for respondent.

COLE, J.*—James D. Peterson appeals a Department of Employment Security decision that he was discharged for willful misconduct, and thus was ineligible for unemployment compensation benefits. We affirm.

## FACTS

James D. Peterson was employed by the United States Postal Service (the Service) in June 1980. In addition to two warning letters issued during Peterson's temporary status, Peterson received several disciplinary actions from his supervisor, Kathy Predmore, after receiving a permanent route assignment in July 1981. In a 5–week period, Peterson received a warning letter, a 1–week suspension, and a 2–week suspension.

On the morning of September 3, 1981, the same morning he received notice of the 2–week suspension, Peterson left the station, but returned approximately 1 hour later. Predmore thought Peterson had been away from his job without permission, so she questioned him, but he ignored her. Peterson testified that he had been out on an authorized break in his postal vehicle, but had returned for some forgotten circulars. Peterson began loading his vehicle, despite Predmore's direct order to answer her questions and not go out on his route. Peterson got into his vehicle, rolled down his window and told Predmore that he had been trying to talk to her for 3 weeks, and indicated that Predmore had no business trying to talk to him now. Peterson then drove away from the station. He was terminated later that day on the grounds of failure to follow instructions.

The Service's Employee and Labor Relations Manual,

---

*Judge W. R. Cole is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

section 666.51, and the M–41 Handbook, section 112.21, list as one of the responsibilities of a carrier to "obey the instructions of your manager." The Labor Relations Manual goes on to tell the carrier that if he questions an order given by a supervisor, he is to obey the order and deal with the problem by filing a grievance.

Peterson claims that the continued documentation of his unsatisfactory work performance was part of a "personal vendetta" against him. Peterson claims that in July 1981, he overheard Predmore and two others discussing how to get rid of him. Peterson testified that his former supervisor had come out on Peterson's route to confront him about his poor work performance and that the manager of University station had threatened Peterson for not showing more respect.

Peterson's shop steward testified that Peterson was "very hostile towards management", but that Peterson received no more pressure than any other carrier. Peterson claims that his union was not supportive and failed to grieve his suspensions or allow him to file a harassment claim.

At a Department hearing, the initial determination that Peterson was discharged by the Service for misconduct and should therefore be denied benefits pursuant to RCW 50.20.060 was affirmed. After review, the Commissioner of the Department also affirmed the denial of benefits.

Peterson appealed the Department's denial of benefits to King County Superior Court. The trial judge affirmed the Department's determination, and findings of fact, conclusions of law, and judgment were entered on February 23, 1983.

## STANDARD OF REVIEW

Peterson contends that review of the issue of whether an employee's actions are misconduct is a mixed question of law and fact, requiring review under the error of law standard. RCW 34.04.130(6) sets out guidelines for judicial review of administrative action:

The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

*Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983) sets out the appropriate tests to be used for the various types of issues under RCW 34.04.130(6):

1. The clearly erroneous standard of review is applicable to factual determinations "in view of the entire record". RCW 34.04.130(6)(e); *Sellers,* at 324.

2. Issues of law are reviewed under RCW 34.04.130(6)(d), using the error of law standard, in which the reviewing court may "essentially substitute its judgment for that of the administrative body, though substantial weight is accorded the agency's view of the law." *Sellers,* at 325.

3. The appropriate standard of review for mixed questions of law and fact is de novo, that is, the inherent authority of a court to determine the correct law independently of the agency's decision, and apply it to the facts as found by the agency. *Sellers,* at 329.

Given these standards of review for the various types of issues raised, the question then becomes the characterization of an issue as fact, law, or mixed fact and law. The clearest discussion of the appropriate standard of review for the determination of employment–related misconduct can be found in *Nelson v. Department of Empl. Sec.,* 31 Wn. App. 621, 644 P.2d 145, *rev'd on other grounds,* 98 Wn.2d 370, 655 P.2d 242 (1982). In that case, the Court of Appeals

determined that

[t]he dispute rests with the interpretation of the words, "misconduct connected with his or her work . . .", RCW 50.20.060, and the application of the undisputed raw facts to the law. Accordingly, we shall review the record de novo to determine whether the Commissioner properly denied benefits.

*Nelson,* at 625.

In *Durham v. Department of Empl. Sec.,* 31 Wn. App. 675, 644 P.2d 154 (1982), the court chose to use the clearly erroneous standard to review the question of what constituted misconduct. In its opinion, the court concluded that the clearly erroneous standard was appropriate, without articulating its reasoning for using such a standard. The court cited *Willard v. Employment Sec. Dep't,* 10 Wn. App. 437, 517 P.2d 973 (1974), a factually similar case, in support of its choice. Both *Durham* and *Willard* involved refusals by the claimants to perform work that they believed was in excess of what their union contract required.

■ However, the *Durham* court miscited *Willard.* The court in *Willard* applied the clearly erroneous standard to the factual question of whether evidence existed that the employer was violating its agreement with the union but did not apply the clearly erroneous standard to the question of whether the actions of the claimants constituted misconduct.

The determination of whether Peterson's actions on September 3, 1981, constituted misconduct connected with his work, making him ineligible for unemployment compensation benefits, is a mixed question of law and fact, requiring this court to determine the law (determining what type of actions constitute misconduct) and to then apply this definition to the facts as found by the tribunal below.

## MISCONDUCT

RCW 50.20.060(1) disqualifies certain individuals from receiving unemployment benefits:

An individual shall be disqualified from benefits beginning with the first day of the calendar week in

which he or she has been discharged or suspended for *misconduct connected with his or her work* and thereafter until he or she has obtained work and earned wages of not less than the suspended weekly benefit amount in each of five calendar weeks.

(Italics ours.) The statute does not itself define the word "misconduct", but case law provides a definition.

In *Willard v. Employment Sec. Dep't, supra,* the Court of Appeals adopted the definition of misconduct found in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 259, 296 N.W. 636 (1941). In *Boynton,* the court stated:

the intended meaning of the term "misconduct," . . . is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good–faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

■ Application of the "misconduct" provision of the statute must take place with regard for certain policy considerations. RCW 50.01.010 provides for

the compulsory setting aside of unemployment reserves to be used for the benefit of persons *unemployed through no fault of their own,* and that this title shall be liberally construed for the purpose of reducing involuntary unemployment . . .

(Italics ours.) Thus, consideration must be given to the intent behind the employee's actions, that is, whether he or she acted knowing that certain conduct might result in dismissal. *Nelson,* at 626.

The question of intent, however, must be balanced with

the notion that

> [t]he disqualification because of "misconduct connected with their work" provision, being penal in nature, is to be construed liberally in favor of the employee so as to minimize the penal character of the provision by excluding cases not clearly intended to be within the exception.

*Weaver v. Wallace,* 565 S.W.2d 867, 869–70 (Tenn. 1978), *quoted in Nelson,* at 627.

Furthermore, "misconduct" must be viewed with an eye toward some standard of right and wrong. This standard can be described as conduct that "the employer has the right to expect of [an] employee, . . ." 48 Am. Jur. *Social Security, Unemployment Insurance, and Retirement Funds* § 38 (1943).

Keeping these policy considerations in mind, the Court of Appeals in *Nelson* set forth a test for determining "misconduct connected with . . . work". RCW 50.20.060(1). On review, this test was modified slightly and adopted by the Washington Supreme Court. As modified, the test for misconduct is:

> [T]he employer must show by a preponderance of the evidence that a reasonable person would find the employee's conduct: (1) had some nexus with the employee's work; (2) resulted in some harm to the employer's interest; and (3) was in fact conduct which was (a) violative of some code of behavior contracted for between employer and employee, and (b) done with intent or knowledge that the employer's interest would suffer.

*Nelson v. Department of Empl. Sec.,* 98 Wn.2d 370, 375, 655 P.2d 242 (1982).

Applying this test to the facts surrounding Peterson's dismissal from the Service, the finding of the Department must be upheld. Peterson's conduct for which he was dismissed occurred on the job, and thus had some nexus with his work. Peterson's supervisor was under the impression that Peterson had been away from his job without permission, and she had no way of knowing whether he returned to his job or not when he left after refusing to respond to

her questioning. Peterson's refusal to obey a direct order of his supervisor was in violation of the Employee and Labor Relations Manual, and Peterson's remarks to his supervisor indicate that his purpose in refusing to respond to Predmore was a deliberate act resulting from animosity.

The test for determining employee misconduct is, therefore, satisfied. The decision of the Department of Employment Security denying benefits to Peterson is affirmed.

SCHOLFIELD, A.C.J., and RINGOLD, J., concur.

Review denied by Supreme Court February 21, 1986.