[No. 7565-2-II. Division Two. May 20, 1986.]

DELORES A. FRANZ, *Respondent*, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Appellant*.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for appellant.

*J. R. Sherrard* and *Sherrard, McGonagle & McKinstry,* for respondent.

PETRICH, J.—The Department of Employment Security of the State of Washington appeals a superior court judgment reversing a decision of the Commissioner of the Department of Employment Security denying Delores Franz unemployment benefits on the basis of misconduct connected with work. We hold that the Commissioner properly concluded that Franz's actions constituted misconduct under RCW 50.20.060. We therefore reverse the decision of the Superior Court and reinstate the decision of the Commissioner.

Delores Franz was employed as a utility billing clerk for the City of Winslow. She was responsible for preparing utility bills. Utility bills were required to be mailed each month no later than the 10th since all bills not paid by the 20th were by ordinance assessed a penalty.

The office was having difficulty getting the bills out on time. In February of 1982, Franz's supervisor, Jean Buxton, met with Franz to discuss late mailings of the bills. Franz was told to be sure to meet the March 10, 1982 deadline and to ask for assistance if she was unable to do so. On March 12, a Friday, Franz was working late trying to get some late bills out. Co-worker May Lundgren offered to help. Franz stuffed the bills into envelopes and Lundgren ran them through the postage meter. Lundgren had rolled back the date on the meter to March 10 after an exchange with Franz as follows:

> . . . she [Delores Franz] says I'm out of forms I have to go and xerox some more of these forms so I says okay, tell me what it is I have to do. I says do the dates on have [sic], on your, are the dates on your bills, what's the date on your bills, she says the 10th, they're suppose to be out on the 10th. She, at that time, running around trying to get the xerox machine, she's in another room, in

the hallway. I says are the bills and envelopes suppose to have the same date on 'em and she answered yes. I says would that mean the 10th, or that's the date of the bills. She says yes, that's the date of the bills. I took it from that she meant the date of the bills and date on the envelopes should be the same so that's when I moved the—I saw the date was the 12th and since they were suppose to be the 10th and put them through.

Franz testified that she did not tell Lundgren to roll back the postage meter and she did not know at the time that the meter had been rolled back.

Buxton received an in–person complaint about late receipt of a March bill. A complaint was also made at a city council meeting about a bill received on March 15, postmarked March 10. Buxton confronted Franz with the information about the rolled–back postage meter after being told by another employee about it. Buxton testified that Franz wanted to know "who told me." Further, Franz told Buxton that she should not terminate Lundgren over it and that she did not think that what they had done was that serious. Both Franz and Lundgren were discharged April 16, 1982. At the hearing, Franz testified that she could not recall ever requesting another employee to roll back the postage meter. Fellow employee Janet Schneider, however, testified that Franz twice had asked her to alter the postmark date on utility bills to reflect the date of the bills rather than the actual date.

Franz was granted unemployment compensation on May 17, 1982. On an appeal by the City of Winslow, the administrative law judge set aside the benefits because he found that Franz directed Lundgren to set back the postage meter. He upheld granting Lundgren benefits because he found that she was unaware that setting the postage meter back was unauthorized; she had followed what she thought to be reasonable and proper orders. The Commissioner upheld the decision concerning Franz. The Superior Court reversed, accepting the Commissioner's factual findings but concluding that they were insufficient to establish misconduct. He concluded that there was no showing of an intent

to harm the employer's interest and no showing of actual harm to the employer's interest, both of which he concluded were required to disqualify a person from unemployment benefits on the basis of misconduct connected with the work under RCW 50.20.060(1).

We review a trial court's decision concerning a final administrative ruling by applying the proper standard of review directly to the record at the administrative proceedings. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323–24, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983). The Commissioner's decision is presumed correct and the burden of proof is on the party attacking it. *In re All–State Constr. Co.*, 70 Wn.2d 657, 659, 425 P.2d 16 (1967). Under the administrative procedure act, we review an agency's factual determinations under the clearly erroneous standard and will reverse those findings only if we are left with the definite and firm conviction that a mistake has been committed. *Ancheta v. Daly*, 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969).[1] In reviewing a mixed question of law and fact, this court reviews the record de novo and applies the law to the established facts. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d at 330.

We apply the clearly erroneous standard to the factual determination of whether the meter was rolled back at Franz's direction and if so, whether Franz's action was knowing and intentional. Lundgren admitted that she had rolled back the postage meter. Although Franz testified that she did not direct Lundgren to roll back the meter nor was she aware that it had been rolled back, Lundgren testified that Franz had answered "yes" when Lundgren asked

---

[1] The Commissioner's decision may be reversed as being arbitrary and capricious if it is willful and unreasoned, in disregard and without consideration of the facts and circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration. *DuPont–Fort Lewis Sch. Dist. 7 v. Bruno*, 79 Wn.2d 736, 739, 489 P.2d 171 (1971). Here, there is no evidence in the record to indicate that the Commissioner's decision was arbitrary and capricious.

if the bills and envelopes were supposed to have the same dates on them, *i.e.,* March 10. When questioned by her supervisor, Franz had wanted to know "who told me." Franz had told her supervisor that she did not think what they had done was that serious. A co–worker testified that Franz had twice in the past asked her to roll back the meter so that the date on the utility bills would reflect the date of the bills rather than the actual date. In viewing the record as a whole, we do not find the Commissioner's factual determination that Franz knowingly and intentionally directed Lundgren to roll back the postage meter to be clearly erroneous.

We apply the error of law standard to the legal issue of whether the established facts constituted misconduct connected with the employee's work within the meaning of RCW 50.20.060.

The Department of Employment Security urges us to uphold the Commissioner's decision on the basis of the test set forth by this court in *Durham v. Department of Empl. Sec.,* 31 Wn. App. 675, 679, 644 P.2d 154 (1982). Franz, however, argues that this court should apply the test adopted by the Washington Supreme Court in *Nelson v. Department of Empl. Sec.,* 98 Wn.2d 370, 655 P.2d 242 (1982). The Superior Court applied the *Nelson* test and concluded that the Department of Employment Security had not carried its burden to show that Franz had been discharged for misconduct connected with work.

In *Nelson,* an employee was discharged for a shoplifting incident which occurred during off–duty hours. The Washington Supreme Court applied the following test to determine if the employee's action constituted misconduct under RCW 50.20.060. The employer must show that employee's conduct "(1) had some nexus with the employee's work; (2) resulted in some harm to the employer's interest; and (3) was in fact conduct which was (a) violative of some code of behavior contracted for between employer and employee, and (b) done with intent or knowledge that the employer's interest would suffer." *Nelson v. Department of Empl.*

*Sec.*, 98 Wn.2d at 375.

In *Durham v. Department of Empl. Sec., supra,* smelter employees were discharged after they refused a foreman's order to stay on the job until a furnace was drained. This court determined that the employees had been discharged for misconduct connected with the work and upheld the Commissioner's denial of benefits. We concluded that the guidelines to be applied in determining whether there was misconduct within the meaning of RCW 50.20.060 are as follows:

1. The employer's order must have been reasonable.
2. The employee's disobedience must have been intentional.
3. The consequences of disobedience to the employer must have been of substance and not merely trivial.
4. There must have been no overriding health or safety factors to excuse disobedience.

*Durham v. Department of Empl. Sec.,* 31 Wn. App. at 679.

The *Nelson* test was developed to apply to an employee's conduct that had occurred off duty and outside the scope of employment. Division One has applied the *Nelson* test to behavior that occurred on the job when a claimant refused to obey the direct order of a supervisor. *Peterson v. Department of Empl. Sec.,* 42 Wn. App. 364, 711 P.2d 1071 (1985). We believe, however, that different tests should be applied to behavior that occurs on the job and within the scope of employment, and behavior that occurs off duty and outside the scope of employment.

The Employment Security Act provides benefits for persons unemployed through no fault of their own. RCW 50.01.010. The *Nelson* factors were designed to allow the court to determine whether the employee acted knowing certain conduct would result in dismissal and whether the employer had a right to expect that that employee would refrain from such conduct. *Nelson v. Department of Empl. Sec.,* 31 Wn. App. 621, 626–27, 644 P.2d 145, *rev'd,* 98 Wn.2d 370, 655 P.2d 242 (1982). Under the *Nelson* criteria, an employee can only be held to have acted with fault if she

had contracted to refrain from that behavior and had acted knowing her employer's interest would suffer. An employer only has a right to expect an employee to refrain from some type of behavior if that conduct has a nexus with the employee's work and results in harm to the employer's interest.

The focus of the inquiry into what constitutes misconduct changes, however, when the behavior in question occurs on the job and within the scope of employment. Nexus with the work and harm to employer's interest are not issues in such situations. At issue is the reasonableness of the employer's order or rule and the reasonableness of the employee's response to that order or rule evaluated in light of all the surrounding circumstances. *See Devine v. Unemployment Comp. Bd. of Review,* 59 Pa. Commw. 318, 429 A.2d 1243 (1981).[2] Even if an employer's request is reasonable, an employee's disobedience can be excused if there is good cause, *e.g.,* overriding health or safety factors, *Smallwood v. Department of Commerce,* 350 So. 2d 121 (Fla. Dist. Ct. App. 1977). Failure to comply with a rule is not misconduct if the employee had no intent to disobey the rule or order. *See Willard v. Employment Sec. Dep't,* 10 Wn. App. 437, 444–45, 517 P.2d 973 (1974). Finally, trivial consequences to the employer of the disobedience do not justify denial of benefits on the basis of misconduct even though they may justify discharge. *Budding v. Department of Job Serv.,* 337 N.W.2d 219 (Iowa Ct. App. 1983). We therefore apply the *Durham* criteria to actions that occur on the job and within the scope of employment to determine whether the conduct at issue constitutes mis-

---

[2]We believe that the Washington Supreme Court recognized this distinction in *Nelson v. Department of Empl. Sec., supra,* when it reversed the Court of Appeals and required that the employer show that behavior was *in fact* violative of a code of conduct contracted for between employer and employee rather than an implied code of behavior as had been suggested by the Court of Appeals in that case. Many of the duties and expectations in an on–the–job situation, however, are implied rather than expressly contracted for. The employer has latitude in expecting certain on–the–job behavior and the employee is on notice that certain implied behaviors are expected.

conduct under RCW 50.20.060.

Here, we conclude that Franz's action in directing Lundgren to roll back the postage meter constituted misconduct. Dishonesty in changing the date on the postage meter was contrary to established policy and procedures. Franz's disobedience was found by the Commissioner to be intentional. Intentional dishonesty has a serious and substantial impact on the interest of the employer in maintaining the integrity of its rules and forbidding dishonesty by its employees. *See Pacquing v. Department of Empl. Sec.*, 41 Wn. App. 866, 707 P.2d 150 (1985). Finally, there are no health or safety factors which would excuse Franz's conduct.

Franz requests attorney's fees on appeal under RCW 50.32.160. A reasonable attorney's fee for this appeal is determined to be in the amount of $1,500. However, such fee shall not be awarded from the Unemployment Compensation Administration fund since the Commissioner's ruling has not been reversed or modified. *In re Persons Employed at St. Paul & Tacoma Lumber Co.*, 7 Wn.2d 580, 110 P.2d 877 (1941).

Judgment reversed and the order of the Commissioner of the Department of Employment Security is reinstated.

WORSWICK, C.J., and ALEXANDER, J., concur.

Review denied by Supreme Court September 2, 1986.