[No. 10182-3-II. Division Two. October 27, 1987.]

JULIE L. DARNEILLE, *Appellant*, v. THE DEPARTMENT
OF EMPLOYMENT SECURITY, *Respondent*.

*J. Dinnen Cleary* and *Carla Montejo* of *Puget Sound
Legal Assistance Foundation,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Thomas
L. Anderson, Assistant,* for respondent.

WORSWICK, J.—Julie Darneille was a cashier for Ernst
Home Centers from March 1982 until January 31, 1985.
Her work was satisfactory until August 1984, but from
August into October of that year she was counseled eight
times and received five warnings (two in writing) for inade-
quate work performance. The problems had to do with cash
register procedures, *e.g.,* not signing in or out on a register
and ringing up a refund in the middle of a sale. On October
16, 1984, Darneille was suspended for 4 days, put on pro-
bation for 6 months, and told that the next disciplinary
action could end in her dismissal.

In January 1985, Darneille rang up a discount sale for an
employee's spouse, a procedure that only a supervisor was

allowed to do. The manager told her that this was a serious infraction and that her next infraction would get her fired. On January 21, 1985, Darneille accepted a check made out to Schuck's, not Ernst (both are subsidiaries of Pay 'n Save), something every cashier had been told not to do. Darneille was fired on January 31, 1985.

Ernst opposed Darneille's application for unemployment compensation. In the hearing that followed, Darneille testified that she did not commit these errors knowingly, that she never meant to harm Ernst, and that Ernst never accused her of making deliberate errors. She attributed her work difficulties to personal problems with her family and boyfriend. The administrative law judge apparently accepted Darneille's explanation, for he incorporated the essentials of her testimony in his findings of fact.

Portions of two of the ALJ's conclusions of law are of particular interest. Citing *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941), as he considered it "approved" in *Durham v. Department of Empl. Sec.,* 31 Wn. App. 675, 644 P.2d 154 (1982) and *Willard v. Employment Sec. Dep't,* 10 Wn. App. 437, 517 P.2d 973 (1974), the ALJ first stated that

[m]isconduct is established when a preponderance of the evidence shows that an employee deliberately, recklessly, *or with repeated negligence* violated a reasonable rule or standard of conduct which the employer had a right to expect. Mitigating and extenuating circumstances are considered in determining misconduct.

(Italics ours.) The ALJ then arrived at the following conclusion:

2. The evidence of record clearly shows that the claimant was involuntarily discharged from her employment because she *willfully and deliberately* neglected to perform her duties in violation of the employer's work standards. The claimant was aware of her shortcomings but *neglected to correct her errors because of preoccupation with personal problems.* Therefor[e], it is concluded that the employer proved by a preponderance of the evidence acts and omissions directly attributable to the claimant

which constitutes misconduct within the meaning of the statute.

(Italics ours.) The upshot of this was the ALJ's ultimate conclusion that Darneille was disqualified from receiving unemployment compensation because of work–connected misconduct. RCW 50.20.060.[1] On appeal, the Commissioner affirmed as, in due course, did the Superior Court. We reverse. We hold that the ALJ's statement of the law was incorrect, and that Darneille is not disqualified because her conduct was not intentional.

Finding no definition of misconduct in Washington cases or the applicable statute, Division One, in *Willard v. Employment Sec. Dep't, supra,* imported a definition from *Boynton Cab Co. v. Neubeck, supra.* We did not find the wide–ranging *Boynton Cab* definition entirely satisfactory, so we ventured, in *Durham v. Department of Empl. Sec., supra,* to distill the principles into a clear and useful set of guidelines for *on–the–job* work–connected misconduct.[2] The proper application of *Durham* guideline 2 presents the only issue in this case: whether Darneille's disobedience of Ernst's work rules was intentional. *See Durham,* 31 Wn. App. at 679. It is apparent that the ALJ, the Commissioner and the Superior Court judge all thought they were applying this *Durham* criterion, but it is equally apparent that the *Boynton Cab* language confounded the effort.

*Boynton Cab,* since its introduction in *Willard,* has been cited uncritically in virtually every Washington case on this

---

[1] RCW 50.20.060(1) provides, in relevant part:

"An individual shall be disqualified from benefits, beginning with the first day of the calendar week in which he or she has been discharged or suspended for misconduct connected with his or her work . . ."

[2] In *Peterson v. Department of Empl. Sec.,* 42 Wn App. 364, 711 P.2d 1071 (1985), *review denied,* 105 Wn.2d 1011 (1986), Division One purported to apply a different set of guidelines to *on–the–job* misconduct, which it derived from *Nelson v. Department of Empl. Sec.,* 98 Wn.2d 370, 655 P.2d 242 (1982). *Nelson,* however, involved *off*–the–job misconduct, which involves different considerations. *See Franz v. Department of Empl. Sec.,* 43 Wn. App. 753, 758, 719 P.2d 597 (1986).

subject. *E.g., Shaw v. Department of Empl. Sec.,* 46 Wn. App. 610, 731 P.2d 1121 (1987); *Peterson v. Department of Empl. Sec.,* 42 Wn. App. 364, 711 P.2d 1071 (1985), *review denied,* 105 Wn.2d 1011 (1986); *Pacquing v. Department of Empl. Sec.,* 41 Wn. App. 866, 707 P.2d 150 (1985); *Ciskie v. Department of Empl. Sec.,* 35 Wn. App. 72, 664 P.2d 1318 (1983); *Nelson v. Department of Empl. Sec.,* 31 Wn. App. 621, 644 P.2d 145, *rev'd on other grounds,* 98 Wn.2d 370, 655 P.2d 242 (1982); *Levold v. Department of Empl. Sec.,* 24 Wn. App. 472, 604 P.2d 175 (1979). While the decisions in these cases are, by and large, correct on the facts, the Department of Employment Security and others in the field who must apply the misconduct statute apparently continue to focus on the *Boynton Cab* language extracted in *Willard,* 10 Wn. App. at 441. This is unfortunate, for that language is patently confusing and this case is a perfect example of the difficulties created by the confusion. *Boynton Cab* simply used too many words, *viz:* "wilful or wanton"; "deliberate violations"; "disregard of standards of behavior"; "carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design"; "intentional and substantial disregard". *Boynton Cab,* at 259–60.

In our view, the language of *Boynton Cab* has served its purpose and should now be left behind. It is our view and our holding—as we attempted to point out in *Durham*—that the focus must be on the quality of the specific conduct in question instead of on any combination of labels derived from *Boynton Cab.* We are satisfied, as we said in *Durham,* that the misconduct disqualifying an employee for unemployment benefits must be intentional.[3] The determinative question must always be: did the employee *intend* to disobey the employer's rules or orders?

The clearly erroneous standard of review is applied to

---

[3]Grounds for discharge is not the issue. Here, as in most of these cases, there is no dispute that the employer had ample reason to terminate the offending employee.

essentially factual issues and the error of law standard to issues concerning which the facts are undisputed. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983); *Ciskie v. Department of Empl. Sec., supra.*[4] Because of the way their findings were framed, it is not clear whether the ALJ and the Commissioner, on undisputed evidence, found only negligence caused by preoccupation with personal problems or, on disputed evidence, found intent because of the repetition of negligent acts. If the former, their orders constituted error of law, because negligence caused by preoccupation with personal problems simply is not *intentional* misconduct. If the latter, their findings are clearly erroneous, because even though arguably there may be some evidence to support this conclusion, we are firmly convinced that, considering the record as a whole and the policy of the statute, they were mistaken.

Darneille's attorney is entitled to attorneys fees on appeal. RCW 50.32.160. He has complied with RAP 18.1. We award $3,000.

Reversed.

REED, C.J., and ALEXANDER, J., concur.

Reconsideration denied November 24, 1987.

Remanded by Supreme Court to the Court of Appeals May 31, 1988.

---

[4]We acknowledge that our statement of the standard of review in *Durham* was incomplete. *See Durham,* 31 Wn. App. at 676–77.