[No. 11240-3-III.   Division Three.   December 31, 1991.]

SHERRY E. BECKER, *Appellant*, v. THE EMPLOYMENT
SECURITY DEPARTMENT, *Respondent*.

*Steven N. Vlcko* and *Cowan, Walker, Jonson, Moore, Nickola & Heye,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Geoffrey G. Jones, Assistant,* for respondent.

THOMPSON, A.C.J. — Claimant challenges the denial of unemployment compensation benefits by the Commissioner

of the Employment Security Department (Department). Benefits were denied on the basis she had been discharged from employment for misconduct connected with her work. We reverse.

In its initial determination, the Department granted benefits to claimant. The administrative law judge (ALJ) affirmed the initial determination, holding the employer failed to establish disqualifying misconduct by claimant. The ALJ's decision was reversed by the Commissioner of the Department, and the Commissioner's decision was upheld by the Superior Court.

The facts as found by the ALJ were adopted by the Commissioner. They are not in dispute. Claimant was employed as a cashier at an automobile supply store in Pasco from November 24, 1989, to March 3, 1990. At the time of her discharge, she was making $4.25 per hour and worked 20 to 30 hours per week.

Claimant was discharged from her job because of errors she made while operating a cash register and as a result of complaints regarding what was perceived as a rude attitude. Between January 22, 1990, and February 11, 1990, claimant received several written and verbal warnings from the store manager regarding cash register errors which included misringing transactions, cash overages, and cash shortages. She was given a 2-day suspension in February. Claimant's employer did not contend any of the cash register errors were deliberate.

On March 2, the store manager received complaints from fellow employees that claimant had been rude to customers on the telephone.[1] That same day, claimant made another

---

[1] At the hearing before the ALJ, employer's store manager testified he "had some complaints on her . . . phone attitude, in answering the phone, and stuff." "[I]t was the way she answered the phone by . . . saying 'Al's Auto, hold' just putting the phone down, didn't use no — . . . 'can you hold just for a second?' ". When asked whether the claimant's telephone conduct was "a function of her personality more than it was something deliberate . . .", he responded, "Possibly, . . . it was her personality. She's had some stress, maybe, or something, I don't know. She was a moody — sometimes she's in a good mood, sometimes she wasn't."

entry error on the cash register and the store manager testified he told her he "was going to do a write up on her, and this [would] consist of a suspension from the company, till further notice from Personnel". Claimant testified the manager told her she was "going to be put on indefinite suspension [and] he'd wait for Personnel to . . . fire" her. In any case, claimant testified she decided it would be best to quit.[2] Her employment was terminated March 3.

The sole issue presented is whether the Commissioner erred in concluding claimant was discharged for misconduct connected with her work and therefore disqualified from unemployment compensation pursuant to RCW 50.20.060(1).[3]

Claimant contends the Commissioner's decision is based upon an erroneous interpretation or application of the law, is not supported by substantial evidence, and is arbitrary and capricious. She argues she may have been negligent, but an employee who fails to perform to her employer's satisfaction because of negligence cannot be denied benefits based on work-connected misconduct.

The Commissioner contends work-connected misconduct includes unexcused acts of negligence after notice or warnings and there was substantial evidence to support the decision.

Judicial review of a final administrative decision rendered by the Commissioner of the Department is governed by the procedural requirements of RCW 34.05.570.[4] Therefore, relief will be granted claimant only if:

---

[2]Claimant's assertion that her discharge was involuntary has not been contested.

[3]RCW 50.20.060(1) provides:
"An individual shall be disqualified from benefits beginning with the first day of the calendar week in which he or she has been discharged or suspended for misconduct connected with his or her work . . .".

[4]RCW 50.32.120 provides:
"Judicial review of a decision of the commissioner involving the review of an appeals tribunal decision may be had only in accordance with the procedural requirements of RCW 34.05.570."

(d) The agency has erroneously interpreted or applied the law; [or]

(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter; [or]

. . . .

(i) The order is arbitrary or capricious.

RCW 34.05.570(3).

The decision of the Commissioner is deemed prima facie correct and the burden of demonstrating its invalidity is on the party asserting its invalidity. RCW 50.32.150; RCW 34.05.570(1)(a); *Henson v. Employment Sec. Dep't*, 113 Wn.2d 374, 779 P.2d 715 (1989).

The term "misconduct" is not defined by statute, although misconduct has been a disqualifying factor under Washington's unemployment compensation laws since 1935. Laws of 1935, ch. 145, § 7(6); Laws of 1937, ch. 162, § 5(b); Laws of 1945, ch. 35, § 74; RCW 50.20.060; *Macey v. Department of Empl. Sec.*, 110 Wn.2d 308, 313, 752 P.2d 372 (1988).

*Macey* acknowledged that differing and conflicting judicial standards for determining disqualifying misconduct had developed over the years. Several of the earlier cases were analyzed, including *Darneille v. Department of Empl. Sec.*, 49 Wn. App. 575, 744 P.2d 1091 (1987), upon which claimant relies, in part. *Macey*, at 318 determined the *Darneille* requirement that *only* intentional conduct could be misconduct was "too stringent" and that "repeated, but unexcused acts, especially after notice or warnings or in violation of established rules" could be of sufficient magnitude to constitute misconduct. However, the court also cautioned that "unsatisfactory job performance whether stemming from inability to perform, errors of judgment or ordinary negligence does not constitute misconduct".

We agree with claimant's contention the Commissioner failed to take into account the following undisputed findings

of fact made by the ALJ and supported by substantial evidence:

> [Claimant] was not capable of performing the duties and responsibilities of the cashier position to the standards and expectations of the employer. This inability was not intentional or deliberate on the part of the claimant. Further, . . . any perceived rudeness or belligerence on the part of the claimant was a function of her personality . . ..

The employer's store manager testified that claimant was incapable of doing her job to his satisfaction. Although there is no dispute that this inability was not intentional or deliberate, this is not required under *Macey*. In any case, claimant's cash register errors constituted "ordinary negligence" or stemmed from her inability to perform; her lack of politeness stemmed from "errors of judgment". Although her performance was undoubtedly sufficient to warrant termination of employment, an issue we need not decide, it is insufficient to constitute disqualifying misconduct for purposes of unemployment compensation benefits. The unemployment compensation act is to be liberally construed to alleviate the suffering caused by involuntary unemployment. RCW 50.01.010.

The Commissioner correctly concluded that instances of inefficiency, unsatisfactory performance, errors in judgment or ordinary negligence do not constitute misconduct, but erred in finding the conduct at issue was disqualifying misconduct. That conclusion is not supported by substantial evidence. RCW 34.05.570(3)(e).

We reverse the Department's denial of benefits to claimant.

MUNSON, J., and GAVIN, J. Pro Tem., concur.